**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

**SUSAN BATISTA,**

            **Plaintiff,**

**v.**

**CITY OF PERTH AMBOY, CITY OF PERTH AMBOY POLICE DEPARTMENT, PERTH AMBOY POLICE DEPARTMENT DIRECTOR WILDA DIAZ, POLICE CHIEF BENJAMIN RUIZ, CITY BUSINESS ADMINISTRATOR GREGORY FEHRENBACH, PERTH AMBOY POLICE OFFICERS MARK CELECKI, LIZA CAPO, LUIS GUZMAN, CITY EMPLOYEE CELESTINA CAMPOS, John Does 1-100 fictitious, and ABC Corporations fictitious 1-100,**

            **Defendants.**

Civ. No. 15-2833 (KM)(MAH)

**OPINION**

---

**KEVIN MCNULTY, U.S.D.J.:**

    Susan Batista, pro se, filed this action against the City of Perth Amboy, City of Perth Amboy Police Department, Perth Amboy Police Department Director Wilda Diaz, Police Chief Benjamin Ruiz, City Business Administrator Gregory Fehrenbach, Perth Amboy Police Officers Mark Celecki, Liza Capo, Luis Guzman, City Employee Celestina Campos, and fictitious parties (together, the "Defendants") in the New Jersey Superior Court, Middlesex County. Two defendants, Perth Amboy Police Officer Mark Celecki and City of Perth Amboy Police Department, removed the case to this court pursuant to 28 U.S.C. § 1441. (DE 1). This court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over pendent state law claims under 28 U.S.C. § 1367. On motion (DE 42), I dismissed all

claims against defendant Perth Amboy Police Department. Now before the Court are the Defendants' motion for summary judgment (DE 179), individual defendant Benjamin Ruiz's motion for summary judgment (DE 178), and Ms. Batista's cross motion for summary judgment. (DE 185).[1]

For the reasons set forth below I will grant these Defendants' motions for summary judgment and deny Ms. Batista's cross motion for summary judgment.

## I.    Facts[2]

---

[1]    Plaintiff's filing (DE 185) contains two documents labeled "Request for Summary Judgment" which I will construe as both an opposition brief and a brief in support of plaintiff's cross-motion for summary judgment. Plaintiff's filing does not contain a response to Defendants' Statement of Material Facts and otherwise fails to comply with the requirements of Federal Rule of Civil Procedure 56 and Local Rule 56.1. Rule 56(c) states that the court need only consider the materials cited by the parties, although it may consider other materials in the record. If a party fails to address the other party's properly supported assertion of fact, the court may consider "grant[ing] summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e). Local Civil Rule 56.1(a) deems a movant's statement of material facts undisputed where a party does not respond or file a counterstatement. L. Civ. R. 56(a).

A failure to dispute a party's statement of material facts, however, "is not alone a sufficient basis for the entry of a summary judgment." *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (holding that even where a local rule deeming unopposed motions to be conceded, the court was still required to analyze the movant's summary judgment motion under the standard prescribed by Fed. R. Civ. P. 56(e)); *see also Muskett v. Certegy Check Servs., Inc.*, Civ. No. 08-3975, 2010 WL 2710555 (D.N.J. July 6, 2010) ("In order to grant Defendant's unopposed motion for summary judgment, where, as here, 'the moving party does not have the burden of proof on the relevant issues, . . . the [Court] must determine that the deficiencies in [Plaintiff's] evidence designated in or in connection with the motion entitle the [Defendants] to judgment as a matter of law.'" (quoting *Anchorage Assocs.*, 922 F.2d at 175)).

Given that Ms. Batista is pro se, and in order to avoid disadvantaging her, I have reviewed both Defendants' and Ms. Batista's statement of material facts to determine the factual background. For Defendants' facts which Plaintiff has disputed, I have disregarded those that are argumentative or legal conclusions and have looked at the exhibits and appendices for corroboration.

[2]    For ease of reference, certain key items from the record will be abbreviated as follows:

"Compl"                    =              Complaint [ECF no. 1]

Plaintiff Susan Batista is a former Perth Amboy resident who rented out rooms in her home to various tenants. (DE 179-4, Ex. E at 49:18–51:25.) One of her tenants in 2011 was an individual named Michael Cole. (*Id*.) Ms. Batista alleges that on or about December 11, 2011, Mr. Cole stole a certain sum of money from her which she stored in a desk drawer in a bedroom occupied by another tenant William Mason. (DE 179-4, Ex. B.) On December 11, 2011, Officer Manuel Lopez of the Perth Amboy Police Department went to Ms. Batista's Perth Amboy residence to investigate the matter, however, did not arrest Mr. Cole because he did not find sufficient probable cause to do so. (DE 179-4, Ex. D; DE 179-5, Ex. F at 41:18–42:1; DE 179-6, Ex. G at 48:9-52:13.) On December 21, 2011, Ms. Batista went to the Perth Amboy Police Headquarters to file a theft report. (DE 179-4, Ex. C.) Civilian report taker Angelica Lopez filled out a report, which stated that Ms. Batista

> kept a yellow envelope with $6,500.00 dollars in currency inside her home office drawer. Victim stated that the only person allowed in her office was William R. Mason (roommate). Victim stated that on 12/04/2011 at 09:30 hrs., she left the office and the envelope was inside the drawer. On 12/11/2011 at 09:30 hrs., when she returned back to the office the currency was missing from inside the envelope. . . . Victim stated that she suspects Mr. Cole stole her currency. . .[3]

---

| "PA Defs. Br." | = | Perth Amboy Defendants' Brief in Support of their Motion for Summary Judgment [ECF no. 179-2] |
|---|---|---|
| "Ruiz Br." | = | Defendant Benjamin Ruiz's Brief in Support of Motion for Summary Judgment [ECF no. 178-4] |
| "Opp." | = | Plaintiff's Opposition to Motion for Summary Judgment and Cross Motion for Summary Judgment [ECF no. 185] |
| "Batista Reply" | = | Plaintiff's Reply Brief [ECF no. 190] |

[3]    Ms. Batista's account of the amount of money allegedly stolen by Mr. Cole has changed. In October 2012, Ms. Batista swore out a criminal complaint against Mr. Cole stating that he stole $16,500 from her. (DE 179-6, Ex. H.) Here, Ms. Batista testified that the amount Mr. Cole stole from her was $32,000, but that she reported only $16,500 because Mr. Cole was in financial difficulty. (DE 179-4, Ex. E at 140:6–11.)

*Id.* Shortly after Ms. Lopez drafted the theft report, defendant Perth Amboy Police Department Detective Mark Celecki met with Ms. Batista, where she gave him an empty envelope that allegedly had contained the stolen money. (DE 179-4, Ex. E at 76:10-23; DE 179-4, Ex. B at No. 8.) Ms. Batista requested that Det. Celecki analyze the envelope for fingerprints. (*Id.*) Det. Celecki testified numerous times that he analyzed the envelope but was unable to detect any fingerprints, and thereafter returned the envelope to Ms. Batista. (DE 179-5, Ex. F at 48:17-21.)

A few months later, on April 19, 2012, Perth Amboy Police Department Detective Liza Capo was assigned to investigate the December 11, 2011 theft incident. (DE 179-4, 179-6, Exs. C and M.) On April 20, 2012, Det. Capo interviewed Ms. Batista at police headquarters. (*Id.*, Ex. M; Ex. K at 116:20–117:19.) At that time, Ms. Batista informed Det. Capo of an interaction she had with Mr. Mr. Cole in the parking lot of the Perth Amboy Municipal Court on April 18, 2012. (*Id.*) Det. Capo informed Ms. Batista that she would try to obtain video surveillance of the interaction to gather additional evidence of the purported verbal exchange between Ms. Batista and Mr. Cole. (*Id.*, Ex. M.) On April 27, 2012, Det. Capo called Ms. Batista to inform her that the cameras were not positioned in the direction of the two individuals. (*Id.*) Ms. Batista, however, recorded her interaction with Mr. Cole and provided the recording to Det. Capo. (DE 179-6, Ex. K at 116:23–117:19.) Due to the poor quality of the recording, the parties disagree whether the recording contains an audible admission from Mr. Cole that he committed the theft. (*See id*; *see also* DE 179-6, Ex. N.) On May 1, 2012, Det. Capo called Ms. Batista to inform her that she did not have enough probable cause to effectuate an arrest of Mr. Cole. (*Id.*, Ex. M.) On or about May 15, 2012, Ms. Batista's case was placed on inactive status after Ms. Batista failed to return Det. Capo's phone calls. (*See id.*, Ex. K, at 119:18–120:6; 138:4–139:3; 145:3–10.)

Five months later, on October 25, 2012, Ms. Batista went to the Perth Amboy Police Department in order to swear out a criminal complaint against

Mr. Cole. (*Id.*, Ex. M.) Det. Capo interviewed Ms. Batista again, and that day, Ms. Batista signed a criminal complaint against Mr. Cole for theft in the amount of $16,550, which under the New Jersey Criminal Code is an indictable third-degree felony offense. (*Id.*, Ex. H.) On October 26, 2012, Mr. Cole turned himself in to the Perth Amboy Police Department, where he was arrested in connection with the 2011 incident. (*Id.*, Ex. M.) Afterwards, the Prosecutor's Office reviewed the facts of this case to determine whether it was appropriate for presentment to a grand jury for indictment. (*Id.*, Ex. G at 53:21–68:4, Ex. H.) On November 9, 2012, the prosecutor administratively downgraded the charges against Mr. Cole to a non-indictable disorderly persons offense, against the wishes of Ms. Batista, and notwithstanding the fact that the amount of money at issue falls within the range of a third-degree indictable offense. (DE 179-4, Ex. E at 148:2–150:7; Ex. G at 53:21–68:4.) The matter was then remanded for trial in the Perth Amboy Municipal Court. (*Id.*)

That criminal matter, *State of New Jersey v. Cole*, 1216-W-2012-1434, was tried before Judge Maria Del Vale-Koch, J.M.C. (DE 179-5, Ex. F.) Ms. Batista invoked a municipal court procedure which allowed her, as a complaining witness, to prosecute the matter herself. *See* NJ. Ct. R. 7:8-1 *et seq*. The court found that Ms. Batista failed to establish beyond a reasonable doubt that Mr. Cole was responsible for the theft, and entered a finding of not guilty. (DE 179-5, Ex. F at 77:12–20.)

In 2014, Mr. Cole brought a separate civil complaint against Ms. Batista regarding destruction of his personal property. (DE 179-6, Ex. O.) Ms. Batista counter-claimed against Mr. Cole for theft in connection with the 2011 incident on a common law conversion theory. (*Id.*) The case was tried before the Honorable Martin E. Kravarick, J.S.C., who found that Mr. Cole proved by a preponderance of evidence that Ms. Batista was liable for $13,322 regarding the destruction of his property, and that Mr. Cole was liable for $16,550 regarding the 2011 theft. (*Id.*, Ex. Q at 44:9–45:20.) Thus, on June 4, 2014, the court entered an order awarding Ms. Batista $16,550 regarding her theft claim

and awarded Mr. Cole $13,322 with respect to his property damage claim. After offsetting the two awards, the net result was a judgment for Ms. Batista in the amount of $3,228. (*Id.*, Ex. R.; DE 179-4, Ex. E at 131:3–133:2.)

Since 2014, Ms. Batista has not undertaken any effort to collect her judgment against Mr. Cole. (*Id.*, Ex. E at 136:15–137:1.) Instead, she has attempted to hold the police responsible for the same damages.

On March 18, 2015, Ms. Batista filed this action against the Defendants in the Middlesex County Superior Court, which was then removed to the District Court for the District of New Jersey. (DE 1.) Ms. Batista's Complaint allege five causes of action against the Defendants: (1) federal claims against the City of Perth Amboy and Perth Amboy Police Department for failure to investigate, destruction of evidence, falsifying police reports, and obstruction of justice; (2) a *Monell* claim against the City of Perth Amboy for failure to train and supervise its law enforcement officers; (3) a civil conspiracy claim; (4) violations of the New Jersey Civil Rights Act and New Jersey Constitution for denying plaintiff her due process and equal protection rights; and (5) negligence under Title 59, New Jersey Tort Claims Act. (*Id.*) Ms. Batista is seeking damages in the amount of $32,000, which includes the value of the stolen money, the value of certain destroyed furniture, and carpet cleaning charges. (DE 179-4, Ex. E, 194:21–196:1.)

## II.  Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Delaware River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party

bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23. "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; see also Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist).

Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 111 L. Ed. 2d 695, 110 S. Ct. 3177 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48. A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When the parties file cross-motions for summary judgment, the governing standard "does not change." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468–69 (D.N.J. 2002) (citing *Weissman v. U.S.P.S.*, 19 F. Supp. 2d 254 (D.N.J.1998)). The court must consider the motions independently, in accordance with the principles outlined above. *Goldwell of N.J., Inc. v. KPSS, Inc.*, 622 F. Supp. 2d 168, 184 (D.N.J. 2009); *Williams v. Philadelphia Housing Auth.*, 834 F. Supp. 794, 797 (E.D. Pa. 1993), *aff'd*, 27 F.3d 560 (3d Cir.1994). That one of the cross-motions is denied does not imply that the other must be granted. For each motion, "the court construes facts and draws inferences in favor of the party against whom the motion under consideration is made" but does not "weigh the evidence or make credibility determinations" because "these tasks are left for the fact-finder." *Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008) (internal quotation and citations omitted).

Here, Ms. Batista appears pro se. "Where the plaintiff is a pro se litigant, the court has an obligation to construe the complaint liberally." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) (citing *Haines v. Kerner*, 404 U.S. 519, 520–521 (1972); *Gibbs v. Roman*, 116 F.3d 83, 86 n. 6 (3d Cir. 1997)). I have construed Ms. Batista's pleadings and filings in that liberal spirit. Ms. Batista has made a number of written submissions explaining her position; some explicitly are directed to the summary judgment motion and some are not, but I have considered them all in connection with this summary judgment

motion. For purposes of this motion, I have treated her factual contentions as if they had been contained in sworn affidavits.

## III. Discussion

In Section III.a, I consider the entire controversy doctrine, or more precisely the mandatory party joinder rule, N.J. Ct. R. 4:5-1(b)(2). As a threshold matter, it would bar this action. In the alternative, however, and particularly in light of the plaintiff's *pro se* status, I examine the merits.

In Section III.b, I grant summary judgment for Defendants on Counts 1 and 4, the federal § 1983 and state civil rights act claims. In Section III.c, I grant summary judgment for Defendants on Count 2, the *Monell* claim against the City. In Section III.d, I grant summary judgment for Defendants on Count 3, the claim of conspiracy under 42 U.S.C. § 1985(3). In Section III.e, I grant summary judgment for Defendants on Count 5, containing the state-law tort claims pursuant to the New Jersey Tort Claims Act.

### a. Entire Controversy/Mandatory Joinder

As a preliminary matter, the Defendants raise an affirmative defense that Ms. Batista is judicially estopped from bringing this lawsuit because New Jersey's "Entire Controversy Doctrine" bars her from doing so. (*See* PA Defs. Br. at 24–26, Ruiz Br. at 6–9.) This is the third litigation arising from the same incident. I find that this action would be barred by the mandatory party joinder rule, New Jersey Court Rule 4:5–1(b)(2).

A bit of history is helpful. New Jersey's Entire Controversy Doctrine was, in its original form, "an equitable preclusionary doctrine that require[d] a litigant to present all aspects of a controversy in one legal proceeding." *Ricketti v. Barry*, No. CIV. 13-6804, 2015 WL 1013547, at *3 (D.N.J. Mar. 9, 2015) (citing *Hobart Bros. Co. v. Nat'l Union Fire Ins. Co.*, 354 N.J. Super. 229, 240 (App. Div. 2002) (internal quotation marks omitted). The Third Circuit has described the doctrine as

. . . "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." *Rycoline Prods., Inc. v. C & W Unlimited,* 109 F.3d 883, 886 (3d Cir. 1997). A mainstay of New

> Jersey civil procedure, the doctrine encapsulates the state's longstanding policy judgment that "the adjudication of a legal controversy should occur in one litigation in only one court[.]" *Cogdell v. Hosp. Ctr. at Orange,* 116 N.J. 7, 560 A.2d 1169, 1172 (N.J. 1989); *see also* N.J. Const. art. VI, § 3, 4 ("[L]egal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be completely determined."); *Smith v. Red Top Taxicab Corp.*, 111 N.J.L. 439, 168 A. 796, 797 (N.J. 1933) ("No principle of law is more firmly established than that a single or entire cause of action cannot be subdivided into several claims, and separate actions maintained thereon.") . . . .

*Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015).

In determining whether a subsequent claim should be barred under this doctrine, "the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions." *DiTrolio v. Antiles*, 142 N.J. 253, 268, 662 A.2d 494 (1995). There is no requirement that there be a commonality of legal issues. *See id.* at 271. A federal court must give a prior state court judgment the same preclusive effect that the state court would give them. *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir.1999) ("To determine the preclusive effect of [the plaintiff's] prior state action we must look to the law of the adjudicating state."); *see also Allen v. McCurry*, 449 U.S. 90, 96, 101 S. Ct. 411, 415 (1980). Thus New Jersey's entire controversy doctrine applies in this federal court "when there was a previous state-court action involving the same transaction." *Kaul v. Christie*, 372 F. Supp. 3d 206, 238–39 (D.N.J. 2019) (citing *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 163 (3d. Cir. 1991)).

Pre-1998, the Entire Controversy doctrine was a particularly stringent mandatory-joinder rule, applicable to both claims and parties. The preclusive effect of the doctrine was implemented by the pre-1998 version of N.J. Ct. R. 4:30A ("Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine"). By amendment in 1998, however, Rule 4:30A "dropped the words 'and parties,'" leaving only mandatory

joinder of claims. *Id.* at 239. Now, the mandatory-claims and mandatory-parties functions are split. Mandatory joinder of claims continues to be governed by Rule 4:30A, as before. Mandatory joinder of parties, however, has been relegated to the somewhat less stringent New Jersey Court Rule 4:5–1(b)(2).

Rule 4:5-1(b)(2) "requires parties to disclose the existence of any non-party who should be joined or who might have potential liability to any part on the basis of the same transactional facts." *Ricketti*, 2015 WL 1013547, at *3 (citing N.J. Ct. R. 4:5–1(b)(2)) (internal quotation marks omitted). Failure to disclose necessary or mandatory parties does not necessarily preclude a party from naming them in a subsequent action. Rather, it may result in a range of sanctions, ranging from payment of costs to dismissal of the successive action. *Id.* Dismissal of a successive action is a "sanction of last resort"; it is appropriate only where "(1) the suit is a 'successive action'; (2) the plaintiff's failure to disclose the existence of other potentially liable parties in the earlier litigation was 'inexcusable'; and (3) the undisclosed parties' right to defend the successive action was 'substantially prejudiced' by their omission." *Ricketti*, 2015 WL 1013547, at *3 (citing *Kent Motor Cars Inc. v. Reynolds & Reynolds, Co.*, 207 N.J. 428, 447 (2011)); *see also Ctr. For Prof'l Adv. v. Mazzie*, 347 F. Supp. 2d 150, 157 (D.N.J. Dec. 9, 2004).

*1. Successive Action.* A subsequent lawsuit is considered a successive action when it "arise[s] out of the same transactions or occurrences as the previous lawsuit." *Id.* (citing *Beale v. Rubin & Rothman, LLC*, No. 08-4279 (JAG), 2009 WL 1916322, at *4 (D.N.J. June 29, 2009). The thrust of the inquiry is whether there is a commonality of facts between the two cases. Here, the current federal action involves the same series of events as the state court actions, specifically the alleged theft of Ms. Batista's money by Mr. Cole, and subsequent investigation into the theft. As a result, I find that the current federal action brought by Plaintiff is a successive action.

*2. Inexcusable omission.* Additionally, it is inexcusable that Ms. Batista failed to join the current Defendants, particularly in the prior civil action. Ms. Batista had a "continuing obligation under New Jersey Court Rule 4:5–1 to disclose the existence of . . . parties who should be joined in the state action." *Id.* She did not comply with those obligations, and in fact certified in the civil case that no other parties should be joined. (See DE 179-6, Ex. O.) Moreover, Ms. Batista was involved throughout the investigation of the alleged theft, and was aware of the identities and roles of all the current Defendants since 2011, and could have easily added them as cross-defendants during the state court proceeding against Mr. Cole, yet Ms. Batista chose not to do so.[4] Although Ms. Batista claims that she did not realize her claims against Defendants until the state court trial, that argument is undermined by the record which demonstrates that she was in communication with the Perth Amboy Defendants throughout the course of their investigation and thus should have been aware of any shortcomings of their investigation during that time. As a

---

[4]     For example, Ms. Batista was able to directly examine current defendant Detective Celecki regarding his role in the investigation during the municipal trial. That line of questioning is as follows:

Q: Did I offer an envelope to you and your department to be analyzed for fingerprints?

A: Yes, -- yes you did.

Q: And do you have the results of those?

A: They were negative at the time.

Q: For all – all fingerprints or –

A: There was no fingerprints of any evidentiary value on the envelope.

Ms. Batista: That's all I could ask.

(DE 179-5, Ex. F at 47:4–48:25). Clearly, Ms. Batista has been aware as early as 2013 that Det. Celecki testified that he checked the envelope provided to him by Ms. Batista for any fingerprints which did not yield any discernable results. Det. Celecki testified much to the same during the 2014 state court proceedings. (*See* DE 179-6, Ex. L.) Ms. Batista currently alleges that Det. Celecki is lying and had never returned the envelope to Ms. Batista, however, these are issues that could and should have been addressed in either of the two prior cases.

result, Plaintiff's failure to disclose the Defendants in the prior trial is inexcusable.

    *3. Prejudice.* Finally, Defendants have met their burden in demonstrating that Ms. Batista's failure to join the current Defendants in the prior cases rises to the level of substantial prejudice. Substantial prejudice occurs when a defendant is unable to maintain an adequate defense in a subsequent suit to its own detriment. *See Ricketti*, 2015 WL 1013547, at *4. In determining whether substantial prejudice in a successive action exists, a court considers the following non-exhaustive list of factors:

> 1. Whether the person not joined in an earlier action is precluded from seeking recovery in a subsequent action;
>
> 2. Whether a person so precluded can nevertheless be alternatively compensated;
>
> 3. Whether the failure to join or identify . . . a person was part of a strategy to thwart the assertion of a valid claim;
>
> 4. Whether the failure to join or identify a person was unreasonable under the circumstances;
>
> 5. Whether a person not joined in an action would be charged with constructive knowledge of that action;
>
> 6. The extent to which judicial resources were employed in the earlier litigation; and
>
> 7. Whether a person not joined in the earlier action might be unfairly hampered in their ability to mount a defense, e.g., due to loss of evidence, the running of an applicable period of limitation, or other prejudice.

*Beale v. Rubin & Rothman, LLC*, No. CIV A 08-4279 (JAG), 2009 WL 1916322, at *3–4 (D.N.J. June 29, 2009) (citing *Hobart,* 806 A.2d at 818–19). Here, Defendants would be substantially prejudiced if this suit moves forward. As an initial matter, the alleged theft occurred more than eight years ago in December 2011, and the successive suit in this court was filed four years after the original incident. *See Alvarez v. Borough of Hoboken*, No. A-4534-10T3, 2013 WL 4236116, at *14 (N.J. Super. Ct. App. Div. Aug. 16, 2013) (finding that defendant was substantially prejudiced where over five years had passed between the incident and filing of successive suit). At this point, memories of

the incident would have faded, witnesses could have moved, and there is the potential that documentary evidence might not be properly preserved. Moreover, considering this matter has already been to trial to a complete verdict not once but twice, and given that the current Defendants have testified in either in the municipal court trial or state court trial, or in both, demonstrates that "New Jersey has already expended significant resources adjudicating the state court action" and to bring another action regarding the same underlying event in federal court would be particularly taxing on judicial resources. *See Beale v. Rubin & Rothman, LLC*, No. CIV A 08-4279 (JAG), 2009 WL 1916322, at *5 (D.N.J. June 29, 2009). Because Plaintiff has not presented a valid reason for not adding the current Defendants to the prior cases, and because Defendants would be substantially prejudiced by this current action, I find that the Entire Controversy Doctrine bars plaintiff from bringing this current action against Defendants in federal court.

*     *     *

I find in addition and in the alternative, however, that Ms. Batista has failed to raise any material factual disputes that would warrant a denial of defendants' motions for summary judgment or warrant summary judgment in her favor. I deal with those issues in the following sections.

### b. Counts One and Four: Section 1983 and New Jersey Civil Rights Act claims

The first and fourth causes of action in the Complaint allege violations of federal and state civil rights underneath the Fourteenth Amendment of the United States Constitution and the New Jersey Civil Rights Act, pursuant to N.J. Stat. Ann. 10:6–1 *et seq.* ("NJCRA"). I will interpret Count One as a claim asserted under 42 U.S.C. § 1983.[5]

---

[5] 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

"A plaintiff may be entitled to relief in the context of a Section 1983 claim if the complaint 'sufficiently alleges a deprivation of any right secured by the Constitution.'" *Graw v. Fantasky*, 68 F. App'x 378, 381 (3d Cir. 2003) (citing *Higgins v. Beyer,* 293 F.3d 683, 688 (3d Cir. 2002)). Section 1983 does not create a substantive right but instead provides a remedy for the violation of rights created by federal law. 42 U.S.C. § 1983; *Oklahoma City v. Tuttle,* 471 U.S. 808, 816, 105 S. Ct. 2427, 2432 (1985). This district has repeatedly interpreted the NJCRA in parallel with 42 U.S.C. § 1983; like § 1983, the NJCRA "provides a means of vindicating substantive rights guaranteed by federal law and New Jersey's Constitution and laws and is not a source of rights itself." *Lapolla v. Cty. of Union*, 449 N.J. Super. 288, 306, 157 A.3d 458, 469 (App. Div. 2017) (citing *Gormley v. Wood-El*, 218 N.J. 72, 98, 93 A.3d 344, 358 (2014)).[6]

A prima facie case under § 1983 requires a plaintiff to demonstrate that (1) a person deprived him or her of a federal right; and (2) that person acted under color of state law. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S. Ct. 1920, 1923 (1980)). Plaintiff has satisfied the second prong of a § 1983 claim with respect to the *individual* defendants. There is no question here that they were acting

---

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

[6] NJCRA provides:

Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

under color of state law since they are either police officers or city officials who were acting in the course of their official duties.[7]

Plaintiff has not, however, satisfied the first prong of a § 1983 claim. Both the first and fourth causes of action essentially allege that Defendants violated Plaintiff's federal and state due process rights because they failed to conduct a proper investigation into the alleged theft. Specifically, Plaintiff alleges that Defendants destroyed evidence (the empty envelope alleged to have contained the stolen money), falsified police reports, and obstructed justice.

It is undisputed that Defendants conducted an investigation in response to Ms. Batista's allegation of theft. Defendants have submitted contemporaneous police reports of the investigation as exhibits to their motion for summary judgment. The investigative steps they took, which are not disputed, are outlined at pp. 3–5, *supra*. Plaintiff herself testified that she repeatedly interacted with various Perth Amboy detectives throughout 2011 and 2012 during the course of the investigation. Plaintiff argues, however, that Defendants' investigation was insufficient and that their police reports were "fabricated" in some unclear manner, in violation of her Fourteenth Amendment rights.

The Fourteenth Amendment provides that "no State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The Due Process Clause guarantees not just "fair process," but also "heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 719–20; 117 S. Ct. 2258, 2267 (1997). While substantive due process

---

[7]    Ms. Batista also asserts these causes of action against the City of Perth Amboy. The plain language of § 1983 "compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978). Thus, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* (emphasis in original). For the reasons stated below in Section III.c, Plaintiff's *Monell* claim against the City of Perth Amboy has not been sustained.

protects many fundamental rights, "there is no constitutional right to the investigation of another." *Lee v. City of Philadelphia*, 627 F. App'x 175, 177 (3d Cir. 2015); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 134–35 (3d Cir. 2015) (Plaintiff "has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual.").[8] Thus, "an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 195–96, 109 S. Ct. 998 (1989)). Because there is no private constitutionally protected interest to an investigation or prosecution of another individual, Ms. Batista has not alleged a cognizable claim underneath 42 U.S.C. § 1983 and NJCRA.

Moreover, the individual Defendants here are entitled to the protections of qualified immunity, which shields government officials from liability for damages so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."

---

[8]     The claim, to the extent it rests on the inadequacy of the criminal prosecution, also raises standing issues. In order for a plaintiff to have standing in federal court, she must have (1) "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly trace[able] to the challenged action of the defendant, and not th[e] result [of] the independent action of some third party not before the court[,]" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992). Here, because there is no constitutional right to an investigation or prosecution of another, Ms. Batista cannot satisfy the first requirement in showing that she suffered an injury in fact. Moreover, there are questions on whether Ms. Batista can satisfy the third element of standing as well. As disclosed by the record, any alleged shortcomings in the criminal investigation did not prevent Ms. Batista from obtaining a judgment against Mr. Cole, which she apparently has made no effort to collect. (DE 179-6, Ex. Q at 44:9–45:20; *id.*, Ex. R.).

*Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009). In other words, so long as an official "reasonably believes that his or her conduct complies with the law, qualified immunity will shield the official from liability." *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 286 (D.N.J. 2013) (citing *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012)). A plaintiff can overcome the protections of qualified immunity if (1) the official's conduct violated a constitutional or federal right; and (2) whether the right at issue was "clearly established." *Id.* (citing *Pearson*, 555 U.S. at 244). As stated above, there is no private constitutional right to the prosecution or non-prosecution of another. And at any rate, the police took the complaint and investigated, and a prosecution *did* result. Thus, Plaintiff cannot overcome the first prong required to overcome qualified immunity.

Additionally, whether a constitutional violation is "clearly established" for qualified immunity purposes requires a court to assess whether it was sufficiently clear that "a reasonable official would understand that what he is doing violates that right." *Sharp*, 669 F.3d at 159. Ms. Batista essentially claims that the Defendants did not properly investigate and prosecute Mr. Cole regarding the alleged theft of her money. Aside from the fact that there is no constitutional right to the prosecution of another, the record is replete with evidence that the individual Defendants did investigate the alleged theft and even were willing to prosecute Mr. Cole. (DE 179-4, Ex. C; *id.*, Ex. D; DE 179-5, Ex. F at 48:17–21; DE 179-6, Ex. K at 104:21–105:2, 119:18–120:6, 138:4–139:3, 145:3–10; *id.*, Ex. L at 56:2–58:17; *id.*, Ex. M.)

The police did not ignore Ms. Batista's complaint, and the steps they took appear reasonable. (*See* Facts, pp. 3–5, *supra*.) The complaints of "fabricated" police reports are not specific and have not been substantiated; they seem to amount to little more than an expression of dissatisfaction that they failed to result in a criminal conviction of Mr. Cole.[9] There is no showing that any

---

[9]    The nonspecific allegations of false police reports and the like were never lent any further substance in discovery. One potential allegation of destruction of evidence turned out to be inconsequential. As quoted in n.4, *supra*, Ms. Batista elicited from

18

evidence existed which the police failed to uncover. Irrespective of whether their actions conformed to the highest investigative standards—an issue on which I express no opinion—the police certainly did not violate, or fall short of, any clearly established *constitutional* standard. Nor do I know of, for example, any binding, reasonably specific case law holding actions like those of the police here to be unconstitutional. Nor have any alleged investigative shortcomings impaired Ms. Batista's efforts to bring a claim against Mr. Lloyd, to the extent that may be relevant; she *did* assert a counterclaim against Lloyd, she prevailed, and she was awarded the full amount allegedly stolen (offset by Mr. Lloyd's claim against her).

Because Ms. Batista has failed to sufficiently allege § 1983 and NJCRA claims, and has not been able to overcome the individual Defendants' rights to the protection of qualified immunity, I will grant summary judgment in favor of Defendants for Counts One and Four of the Complaint.

### c. Count Two: *Monell* Claim

Plaintiff also asserts a *Monell* claim against the City of Perth Amboy, alleging that the city failed to adequately supervise and train "various aspect[s] of law enforcement, criminal prosecution[,] procedure[,] and substance" presumably regarding its law enforcement officers. (Compl. at 18) Plaintiff also alleges that "Defendants tolerated and condoned the violation of the civil rights of its citizens by its police officers by failing to properly investigate and discipline its officers with respect to citizen complaints and the Rights of Citizens to report crimes 24 hours a day, seven days a week." (*Id.* (emphasis in original)).

---

Det. Celecki that he checked the envelope but found no usable fingerprints, to which she replied, "That's all I could ask." (DE 179-5, Ex. F at 47:4–48:25). She now says the police are lying when they say they returned the envelope to her. There is no showing, however, that the envelope had any evidentiary value.

Again, summary judgment must be granted in favor of Defendants. A municipality cannot be sued under § 1983 because of an injury inflicted solely by its employees or agents, but it can be held liable when the injury inflicted is a result of a policy or custom the municipality has adopted. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996). Thus, in order to establish a prima facie case for *Monell* liability, the Plaintiff must "(i) demonstrate the existence of an unlawful policy or custom; (ii) that resulted in a deprivation of the rights, privileges, or immunities secured by the Constitution or laws of the United States; and (iii) that the policy or custom was the proximate cause of the alleged deprivation." *Maldonado v. City of Passaic Bd. of Educ.*, No. CV1712245ESJAD, 2020 WL 289649, at *7 (D.N.J. Jan. 21, 2020) (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). A government policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (quoting *Bielevicz*, 915 F.2d 845, 850 (3d Cir. 1990)). In contrast, "a course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well-settled' as to virtually constitute law." *Id.*

Here, Ms. Batista alleges that the City adopted a custom of failing to adequately train its police officers in proper criminal procedures and investigatory techniques in violation of her Constitutional rights. As an initial matter, Plaintiff has not demonstrated that she experienced a deprivation of any rights, privileges, or immunities guaranteed by the Constitution or any law, *see* Section III.b, *supra*, so there is no constitutional violation by its employees that would be attributable to the City. Moreover, the record is replete with evidence that the Perth Amboy police department did engage in an investigation, although the investigation did not meet Plaintiff's personal expectations. Plaintiff's allegation that she was denied her right to report crimes has not led anywhere; it cannot be denied that she reported the crime,

and that it was prosecuted. Finally, Plaintiff fails to provide any evidentiary support for her contention that the investigative policies and procedures of the City or the Police Department were deficient in some overall or systematic way. Plaintiff does not, for example, cite any other comparable situations or incidents. Because Plaintiff has failed to demonstrate any facts to establish the existence of a custom that was the proximate cause of any alleged deprivation of her constitutional rights, I will grant summary judgment in favor of Defendants, and the City in particular, on Count Two of the Complaint.

### d. Count Three: Section 1985(3) Conspiracy Claim

Ms. Batista also raises a conspiracy claim against Defendants, citing 42 U.S.C. §§ 1985 and 1986. Specifically, she alleges that Defendants "conspired for the purpose of impeding, hindering, obstructing, destroying falsifying and defeating the due course of justice with the intent to deny the Plaintiff the protection of the laws and to injure Plaintiff through their actions." (Compl. at 19.) Plaintiff also alleges that the defendant police officers' decisions and actions during the course of the investigation into the alleged theft were "carried out in secret/conspiracy and never approved by Supervisors."[10] (Opp. at 11.)

Section 1985 is a federal statute which provides civil remedies for a conspiracy which deprives a person of civil rights. It is unclear from Plaintiff's Complaint or Opposition brief whether she raises claims under 42 U.S.C. § 1985(2) or (3). Section 1985(2) prohibits conspiracies to obstruct justice with the intent to deny equal protection of the laws. Section 1985(3) prohibits conspiracies that deprive persons of their rights or privileges under the equal protection of the laws. Both subsections, however, require a plaintiff to demonstrate that there was a race-based motive for the defendants' alleged actions. *Limehouse v. Delaware*, 144 F. App'x 921, 923 (3d Cir. 2005) (citing

---

[10]     I observe in passing that this allegation would seem to be inconsistent with the *Monell* allegations that these events occurred pursuant to an overall municipal or departmental policy.

*Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Davis v. Township of Hillside,* 190 F.3d 167, 171 (3d Cir.1999)).[11]

Ms. Batista testified at her deposition that she believes she was the target of "reverse discrimination" by Defendant Mayor Diaz. (DE 179-4, Ex. E at 45:17.) Specifically, Plaintiff testified:

> A. I have a conspiracy that, if you look at all the demographics and all the data, it's not just me. It's whites, blacks, and Asians. They don't want us there anymore
> Q. The police department has a conspiracy?
> A. It's the mayor.
> Q. You're the victim of a conspiracy on the basis of your ethnicity. Is that your testimony?
> A. Yes. Yeah.

It is not sufficient to simply identify the participants by race and hypothesize a discriminatory animus. Plaintiff fails to point to any facts or evidence in the record to support her allegation that she was the target of a reverse discrimination conspiracy by defendant Diaz. Nor does she cite evidence to connect this entirely hypothetical allegation to any denial of her rights or privileges in connection with the theft investigation. As a result, Plaintiff's conspiracy claim under 42 U.S.C. § 1985 fails.

Ms. Batista also raises a claim under 42 U.S.C. § 1986. A cause of action under § 1986, however, requires the existence of a § 1985 conspiracy. *Patel v. Crist*, No. CV 19-9232, 2020 WL 64618, at *5 (D.N.J. Jan. 7, 2020) (citing *Clark v. Clabaugh*, 20 F.3d 1290, 1295 n.5 (3d Cir. 1994)). That has not been demonstrated.

---

[11] A claim under § 1985(3), in particular, requires a plaintiff to demonstrate

(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

*Mosca v. Cole*, 384 F. Supp. 2d 757, 769 (D.N.J. 2005), *aff'd*, 217 F. App'x 158 (3d Cir. 2007) (quoting *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997).

Because Plaintiff has not established a prima facie claim under 42 U.S.C. §§ 1985 and 1986, or any material facts in dispute regarding these claims, summary judgment is granted to defendants on Count 3.

### e. Count Five: State Law Tort Claims under the New Jersey Tort Claims Act ("TCA")

Finally, Plaintiff alleges that Defendants negligently refused to allow her access to the police department to file a criminal report, destroyed evidence, and denied her the opportunity to prosecute of Mr. Cole all in violation of the TCA. Ms. Batista claims that as a result of Defendants' actions, she suffered from "chronic insomnia, heart and chest pains, breathing problems, weakness, [and] PTSD." *See* Batista Reply at 8. The allegations of false reports or destruction of evidence are nonspecific and have not been borne out by discovery. *See supra.* There is, however, a more basic threshold issue.

The TCA is a "statutory mechanism through which the New Jersey Legislature effected a limited waiver of sovereign immunity." *Baldeo v. City of Paterson*, No. CV185359KMSCM, 2019 WL 277600, at *5 (D.N.J. Jan. 18, 2019). Under the TCA, public entities are generally immune from liability for an injury arising out of an act or omission of the public entity, a public employee, or any other person, unless "there is a specific statutory provision that makes it answerable for a negligent act or omission."[12] *Id.*; see also N.J. Stat. Ann. § 59:2–1. Additionally, a public employee is not immune from suit under the TCA if a plaintiff's claim is based on the employee's willful misconduct. *See* N.J. Stat. Ann § 59:3–14.

As an initial procedural matter, under the TCA, a plaintiff must provide notice of her claim no later than ninety days after the claim has accrued. *See* N.J. Stat. Ann. § 59:8–8. Ms. Batista does not allege that she complied with TCA's notice requirement and, having reviewed the record, I find no evidence

---

[12]     The statutory definition of "public entity," includes "any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." N.J. Stat. Ann. § 59:1–3.

that any of the Defendants received this notice. As a result, Ms. Batista's state law tort claim cannot succeed against Defendants because she failed to comply with the notice requirements under the TCA.[13]

As a result, summary judgment must be granted in favor of Defendants on Plaintiff's TCA claim.

## IV.   Conclusion

For the reasons set forth above, I will grant summary judgment in favor of the Perth Amboy Defendants and Defendant Benjamin Ruiz on all counts (DE 178, 179) and deny Plaintiff Susan Batista's Cross Motion for Summary Judgment (DE 185).

An appropriate order follows.

Dated: March 23, 2020

/s/ Kevin McNulty

_____
**Kevin McNulty**
**United States District Judge**

---

[13]   Although I need not reach the issue, Defendants assert in addition that the TCA limits damages to be awarded against a public entity or public employee for injuries where an individual suffered "permanent loss of bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00." N.J. Stat. Ann. § 59: 9–2. Ms. Batista's alleged injuries however do not meet the threshold requirement of demonstrating a permanent loss of bodily function, disfigurement, or dismemberment as required by the statute. Although she suffers from chronic unspecified chest pain, anxiety, major depressive disorder, and issues with sleep, she has not demonstrated that any of these conditions are permanent, and that they cause any loss of bodily function. *See Pascucci v. Twp. of Irvington, Irvington Police Dep't*, 46 F. App'x 114, 116 (3d Cir. 2002) (affirming district court decision granting summary judgment to defendants for plaintiff's TCA claims because plaintiff's injuries consisting of panic attacks, anxiety, depression, and insomnia did not meet the threshold requirement of demonstrating permanent loss).